UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Daniel Dorosh, Pamela Dorosh-Walther, and Deanna Dorosh, | File No. 23-cv-1144 (ECT/LIB) |
| Plaintiffs, | |
| v. | **OPINION AND ORDER** |
| Minnesota Department of Human Services Commissioner; Jodi Harpstead; Anoka County; Anthony Palumbo; Bryan Frantz; Lisa Broos Jones; Nancy Norman Sommers; ABC Payee, Inc.; James Munoz; Sandy Munoz; Brenda Schurhamer; Kari Schuster; Jesse Perron; Thomas Allen Inc.; Presbyterian Family Foundation; Paul Jeddeloh; Catherine Johnson; Shirley Olson; Julie Blank; Jason Gertken; Jesse Griffin; Bolt, Hoffer, Boyd; Lutheran Social Services; Robin Tomney; Patrick Theuson; Kimberly Watson; Cassandra Jahnke; Volunteers of America (VOA); Aldrich Boarding Care Home; Everyday Living; Blake Elliot; Riverside Montage Inc.; Bonnie Rask; Cynthia MacDonald, *Minnesota Department of Human Services Assistant Commissioner and Medicaid*; Douglas Johnson; Stearns County; Sherburne County; Kathleen Heaney; Julie Manworren; Shani Christopher; and Janell Kendall, | |
| Defendants. | |

Daniel Dorosh, Pamela Dorosh-Walther, and Deanna Dorosh, Pro Se.

Aaron Winter and Brian Card, Minnesota Attorney General's Office, for Defendants Minnesota Department of Human Services Commissioner, Jodi Harpstead, and Cynthia MacDonald.

Jason J. Stover and Robert I. Yount, Anoka County Attorney's Office, for Defendants Anoka County, Anthony Palumbo, Bryan Frantz, Lisa Broos Jones, and Nancy Norman Sommers.

Barbara P. Berens, Berens & Miller, PA, Minneapolis, MN, for Defendants ABC Payee, Inc., and James Munoz.

James Francis Christoffel, Christoffel & Elliott, P.A., St. Paul, MN, for Defendants Brenda Schurhamer, Kari Schuster, Jesse Perron, and Thomas Allen Inc.

Elisa M. Hatlevig, Jardine Logan & O'Brien PLLP, Lake Elmo, MN, and Trevor S. Johnson, Lake Elmo, MN, for Defendants Presbyterian Family Foundation, Catherine Johnson, Shirley Olson, Julie Blank, and Jason Gertken.

Barry A. O'Neil and Nathan Zellmer Heffernan, Lommen Abdo, P.A., Minneapolis, MN, for Defendant Paul Jeddeloh.

Jesse R. Griffin, Charles H. Johnson & Associates, New Brighton, MN, for Defendants Jesse Griffin and Bolt, Hoffer, Boyd.

Brandon J. Wheeler and Ryan A. Olson, Felhaber, Larson, Fenlon & Vogt, PA, Minneapolis, MN, for Defendants Lutheran Social Service, Robin Tomney, Patrick Theuson, Kimberly Watson, and Cassandra Jahnke.

Lauren Hoglund and William L. Davidson, Lind Jensen Sullivan & Peterson, P.A., for Defendants Volunteers of America (VOA) and Julie Manworren.

Steven J. Sheridan and Matthew P. Lawlyes, Fisher Bren & Sheridan, LLP, Minneapolis, MN, for Defendants Aldrich Boarding Care Home, LLC, and Blake Elliot.

Bonnie Rask, Pro Se.

Jessica E. Schwie, Kennedy & Graven, Chartered, Minneapolis, MN, for Defendants Stearns County and Janell Kendall.

James R. Andreen and Samantha R. Alsadi, Erstad & Riemer, P.A., Minneapolis, MN, for Defendants Sherburne County and Kathleen Heaney.

Shani Christopher, Pro Se.

---

Pro se sibling Plaintiffs Daniel Dorosh, Pamela Dorosh-Walther, and Deanna Dorosh, bring 32 counts against 41 Defendants—state entities, long-term-care facilities, attorneys, guardians, and related individuals—alleging misconduct relating to Daniel's guardianship. Plaintiffs allege that Defendants violated their constitutional rights, statutory rights, and committed common-law torts.

Defendants Aldrich Boarding Care Home, LLC, and Blake Elliot—the long-term-care facility where Daniel currently resides and its owner (collectively the "Aldrich Defendants")—move to dismiss under Federal Rules of Civil Procedure 8(a)(2), 12(b)(1), and 12(b)(6). The motion will be granted for several reasons. Plaintiffs' 234-page Amended Complaint violates Rule 8(a)(2). Most of Plaintiffs' claims are also barred by the *Rooker-Feldman* doctrine. And Plaintiffs waived their remaining claims against the Aldrich Defendants by failing to file a brief opposing the motion to dismiss. Even if the claims were not dismissed on those grounds, Plaintiffs fail to state a plausible claim against the Aldrich Defendants under Rule 12(b)(6).[1]

I

The Amended Complaint spans 234 pages and contains 1,113 paragraphs. Some allegations are segregated against specific Defendants. Many are not. Few allegations are in chronological order. And all 32 counts are purportedly raised by each Plaintiff against

---

[1]   There is another problem. Almost all of the claims brought by the three Plaintiffs are Daniel's alone. But the state district court found Daniel incompetent and appointed a guardian. Therefore, Daniel likely lacks the capacity to sue in federal court without a representative. And Deanna and Pamela are unable to represent Daniel pro se in federal court. *See* 28 U.S.C. § 1654.

all 41 Defendants.  To parse all of Plaintiffs' factual allegations from the conclusory and marshal them into a chronological narrative would be a futile task.  For that reason, a chronological overview of events will be provided first, drawing from public court records of the underlying guardianship proceeding.[2]  Then, Plaintiffs' specific allegations against the Aldrich Defendants will be summarized.

A[3]

*Daniel lives with Deanna*.  Daniel has a developmental disability, complicated medical history, and requires assistance with everyday life.  ECF No. 100-3 at 1.  Prior to 2017, Daniel lived with his family.  ECF No. 100-1 at 2; ECF No. 100-3 at 1.  In 2013 or 2014, he moved in with Deanna, his sister.  ECF No. 100-1 at 2; ECF No. 100-4 at 5.  Daniel was happy living with Deanna.  Am. Compl. [ECF No. 8] ¶ 356.  Despite his

---

[2]     Defendants submit declarations attaching exhibits from the underlying guardianship action to support their motions to dismiss.  *See* Wheeler Decl. [ECF No. 100]; Lawlyes Decl. [ECF No. 149].  In resolving a Rule 12(b)(6) motion, courts ordinarily do not consider matters outside the pleadings.  *See* Fed. R. Civ. P. 12(d); *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017).  Courts may, however, "additionally consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned."  *Zean*, 858 F.3d at 526 (internal quotation marks and citations omitted).  The documents filed in Anoka County District Court, No. 02-PR-17-305, are part of a public court record of which the Court may take judicial notice and properly consider in the context of the Aldrich Defendants' motion. *See, e.g*, *Crooks v. Lynch*, 557 F.3d 846, 848 (8th Cir. 2009) (citing *Stutzka v. McCarville*, 420 F.3d 757, 761 n.2 (8th Cir. 2005)).

[3]     In analyzing a Rule 12(b)(6) motion to dismiss for failure to state a claim, all factual allegations in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff.  *See Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990).  Accordingly, the relevant facts drawn from the Amended Complaint are accepted as true.

disability, Daniel was able to attend mass, participate in theology study groups, and take computer classes. *Id.* ¶ 148.

*Anoka County investigates Deanna for maltreatment.* In October 2014, Anoka County Adult Protection opened an investigation into Deanna's care of Daniel. ECF No. 100-1 at 3. In early 2015, Anoka County reported to the Social Security Administration that Deanna was financially exploiting Daniel's Social Security benefits. Am. Compl. ¶¶ 208–09. As a result, Deanna was replaced as Daniel's "Rep[resentative] Payee" for his Social Security benefits. *Id.* ¶ 219. On May 15, 2015, Anoka County "filed a False Maltreatment Report [against Deanna] . . . claiming Maltreatment due to financial exploitation and lack of medical care." Am. Compl. ¶ 212. Plaintiffs allege Anoka County investigated Deanna and filed these false reports "solely to take guardianship" of Daniel. Am. Compl. ¶¶ 239–40.

*Anoka County petitions to appoint a guardian and conservator.* On June 5, 2017, Anoka County Social Services petitioned Anoka County District Court to appoint a guardian for Daniel. ECF No. 100-1. Because he was not independently represented by counsel, the state district court appointed Jeffrey J. Storey to serve as Daniel's attorney during the guardianship proceeding. ECF No. 100-2. Anoka County Social Services later filed an amended petition requesting a guardianship and conservatorship. Amended Petition, *In re Dorosh*, No. 02-PR-17-305 (Anoka Cnty. Dist. Ct. Aug. 7, 2017) (Index No. 18). On August 14, 2017, Deanna intervened and moved to dismiss the guardianship petition. ECF No. 100-4. After a contested hearing, the state district court granted the

5

petition on August 15, 2017, appointing Northland Family Solutions, LLC ("Northland"), as Daniel's guardian and conservator.  ECF No. 100-3 at 4.

*Daniel is forcibly removed from Deanna's home*.  On August 17, 2017, law enforcement forcibly removed Daniel from Deanna's home and transported him to a hospital until long-term placement was found.  Am. Compl. ¶ 50.  On September 4, 2017, Northland moved Daniel from the hospital to "Mary T. Corp. Institution Intermediate Care Facility," where Daniel remained until April 5, 2018.  *Id.*

*Deanna petitions to remove the guardian*.  On September 18, 2017, Deanna filed a motion to amend the order granting the guardianship petition or alternatively for a new trial.  ECF No. 100-7 at 2.  On December 28, 2017, Deanna filed a petition to remove Northland as the guardian and conservator.  ECF No. 100-6.  The state district court denied Deanna's motions and petition.  ECF No. 100-7 at 7.

*Daniel returns to Deanna's home, but the guardian forcibly removes him again*.  On April 5, 2018, "[Daniel] was removed from the Mary T. Institution, arrested, [and] forced to Hennepin County Jail," Am. Compl. ¶ 368, because of a fight with other residents at the facility.  ECF No. 149-1 at 3.  Deanna bailed Daniel out of Hennepin County Jail and brought him to her home.  *Id.*  Deanna requested the state district court allow Daniel to remain at her home, but the court denied her request.  *Id.* at 1.  "On or about June 9, 2018 . . . [Northland] had [Daniel] kidnapped again . . . and forced him to a Highly Restrictive DHS Crisis Locked Facility, Pine City Crisis."  Am. Compl. ¶¶ 389–90.

*Deanna petitions to replace Daniel's court-appointed attorney*.  On July 27, 2018, Deanna filed a petition to replace Daniel's court-appointed attorney, Mr. Storey,

contending that Daniel wanted to be represented by an attorney of his own choosing. ECF No. 100-12 at 4; Petition for Independent Counsel for Ward, *In re Dorosh*, No. 02-PR-17-305 (Anoka Cnty. Dist. Ct. July 27, 2018) (Index No. 142). In response to Deanna's motion, the state district court appointed a guardian ad litem. ECF No. 100-12 at 4. The state district court ordered the guardian ad litem to investigate and report whether Daniel was satisfied with Mr. Storey. *Id.* In an October 2018 report, the guardian ad litem did not recommend discharging Mr. Storey, and the court declined to discharge him. *Id.* at 4, 21.

*Deanna takes Daniel from a group home without the guardian's permission.* On November 14, 2018, Northland moved Daniel to "Bridges Everyday Living [a group home in] Sauk Rapids." Am. Compl. ¶ 50. "On November 23, Thanksgiving Day, Bridges Everyday Living called the family to take [Daniel] to his home for a couple of days[.]" Am. Compl. ¶ 436.[4] In response, Anoka County sought an emergency order to remove Daniel from Deanna's care. ECF No. 100-12 at 4. The emergency order was granted on November 26, 2018, but Daniel was not removed immediately. *Id.*

*Law enforcement forcibly return Daniel to the group home.* On November 28, 2018, Deanna filed a pro se motion on Daniel's behalf to remove his court-appointed attorney and filed several affidavits signed by Daniel stating that he wished to hire private counsel. *Id.* Deanna also filed a pro se motion on Daniel's behalf requesting that he remain at her home. Ward's Motion to Remain in Current Abode, *In re Dorosh*, No. 02-PR-17-305 (Anoka Cnty. Dist. Ct. Nov. 28, 2018) (Index No. 225). On November 29, 2019, Deanna

---

[4]     The state district court found that Deanna had moved Daniel from the Sauk Rapids group home without Northland's permission. ECF No. 149-2 at 1.

and Daniel attended a hearing on pending motions, including the appointment of a successor guardian. Ct. Clerk Minutes, *In re Dorosh*, No. 02-PR-17-305 (Anoka Cnty. Dist. Ct. Nov. 29, 2018) (Index No. 240). The state district court refused to consider Deanna's pro se filings, directing all represented parties to file motions through counsel with proper service of process. *Id.*[5] After the hearing, Anoka law enforcement "arrested" Daniel and forcibly returned him to the Sauk Rapids group home. Am. Compl. ¶¶ 50, 443, 446.

*The court appoints a successor guardian and limits contact between Deanna and Daniel*. On December 3, 2018, the state district court appointed Defendant Lutheran Social Service of Minnesota as the successor guardian and conservator. ECF No. 100-9 at 3. That same day, the court ordered no unsupervised contact between Deanna and Daniel without express approval from the guardian. ECF No. 149-2. On December 20, 2018, the state district court issued an order authorizing the current guardian and future guardians to prohibit Deanna from contacting Daniel through March 15, 2019. ECF No. 149-3. It ordered subsequent contact to be supervised by the guardian consistent with Daniel's expressed desires. *Id.*

*The successor guardian moves Daniel to a new facility*. On February 5, 2019, Lutheran Social Service moved Daniel from the Sauk Rapids group home to "Montage CRS Facility" in St. Cloud. Am. Compl. ¶ 473. Deanna alleges Montage staff "maltreated

---

[5]     Deanna was represented by counsel at this November 29, 2019 hearing.

[Daniel] physically and emotionally," Am. Compl. ¶ 475, only provided him with substandard food, *id.* ¶ 476, and removed his upper teeth, *id.* ¶ 482.

*Deanna petitions again to remove the guardian.* On May 19, 2020, Deanna filed a petition to remove Lutheran Social Service as Daniel's guardian, nominating a family friend to be Daniel's successor guardian. ECF No. 100-10. Deanna alternatively requested a modification of the guardian's duties to grant Deanna the right to participate in Daniel's medical care. Later that day, Deanna filed an amended petition for emergency relief requesting that a private attorney, Jesse Griffin, replace Mr. Storey as Daniel's counsel. ECF No. 100-12 at 6. On August 19, 2020, the state district court denied Deanna's request to remove Lutheran Social Service, denied Deanna's request to modify the guardian's duties, and denied Deanna's request to discharge Mr. Storey. ECF No. 100-12 at 20–21.[6]

*The guardian moves Daniel to another crisis facility.* On November 3, 2020, Lutheran Social Service moved Daniel "to Meridian Locked Crisis Facility in Crystal, MN." Am. Compl. ¶ 488. Plaintiffs allege Meridian was "another highly restrictive and inappropriate environment for [Daniel]." *Id.* By this time, the relationship between Daniel's family members and Lutheran Social Service had broken down. *See* Am. Compl. ¶¶ 486–87, 491–94. Lutheran Social Service continued to limit contact between Deanna and Daniel, including filing a statutory notice of restrictions requiring Deanna's visits with

---

[6] On February 11, 2021, the state district court granted Mr. Storey's motion to withdraw. Order, *In re Dorosh*, No. 02-PR-17-305 (Anoka Cnty. Dist. Ct. Feb. 11, 2021) (Index No. 348). Mr. Griffin replaced Mr. Storey as Daniel's attorney. Am. Compl. ¶ 471. For reasons that are not clear from the record, at some point, Mr. Griffin stopped representing Daniel in the guardianship proceeding and is now a Defendant in this lawsuit.

Daniel to be supervised.  Notice of Restrictions, *In re Dorosh*, No. 02-PR-17-305 (Anoka Cnty. Dist. Ct. Jan. 13, 2021) (Index No. 338).[7]  Lutheran Social Service also rejected proposals by Daniel's family for him to return to Deanna's home on a short-term basis. Am. Compl. ¶ 487.  Deanna and other family members sent "numerous and comprehensive . . . letters informing Meridian of the unconstitutional guardianship, maltreatment and restrictive placement." *Id.* ¶ 497.

*The guardian moves Daniel to his current facility*.  In response to the family's letters, Meridian directed Lutheran Social Service to move Daniel out of their facility. *Id.* Lutheran Social Service decided to move him to Aldrich Boarding Care in St. Cloud. *Id.* ¶ 50.[8]  On behalf of Daniel, Deanna filed a pro se "motion/objection" to this change in abode, but the state district court did not consider the motion because Daniel was a represented party.  Am. Compl. ¶ 500; Order, *In re Dorosh*, No. 02-PR-17-305 (Anoka Cnty. Dist. Ct. Mar. 26, 2021) (Index No. 361).  Lutheran Social Services moved Daniel to Aldrich Boarding Care on March 15, 2021.  Am. Compl. ¶ 50.  Daniel currently resides at Aldrich Boarding Care. *Id.* ¶ 42.

*Anoka County petitions for a successor guardian*.  On April 15, 2021, the state district court granted Lutheran Social Service's request to discharge the conservatorship.

---

[7]     On December 20, 2021, Lutheran Social Service filed a new Notice of Restrictions, restricting "other family members or friends that may be enlisted by [Deanna]" to supervised visits with Daniel.  Notice of Restrictions, *In re Dorosh*, No. 02-PR-17-305 (Anoka Cnty. Dist. Ct. Dec. 20, 2021) (Index No. 396).

[8]     Plaintiffs refer to Aldrich Boarding Care as "Bridges" throughout the Amended Complaint.  Am. Compl. at 3.  For clarity and accuracy, it will be referred to as Aldrich Boarding Care in this Order.

Order Discharging Conservatorship, *In re Dorosh*, No. 02-PR-17-305 (Anoka Cnty. Dist. Ct. Apr. 15, 2021) (Index No. 367).   On June 9, 2022, Anoka County Social Services petitioned for the appointment of a successor guardian because Lutheran Social Service intended to resign.   ECF No. 100-13 at 1; *see also* Petition to Appoint Successor, *In re Dorosh*, No. 02-PR-17-305 (Anoka Cnty. Dist. Ct. June. 9, 2022) (Index No. 398). Plaintiffs attempted to remove the guardianship proceeding to federal court, but the state district court refused to consider the motion.   Am. Compl. ¶ 620.   On August 2, 2022, the court appointed Defendant Presbyterian Family Foundation, Inc., as Daniel's successor guardian.   ECF No. 100-13.

*The new guardian prohibits Deanna and Pamela from contacting Daniel*.   On August 25, 2022, Deanna and Pamela went to Aldrich Boarding Care to meet with Daniel. Am. Compl. ¶ 57.   Shortly after they arrived, Presbyterian Family Foundation directed Aldrich Boarding Care to call the police and issue a no trespass order against Deanna and Pamela.   *Id.* ¶ 58.   That same day, Presbyterian Family Foundation filed a new notice of restrictions prohibiting Deanna and Pamela from contacting Daniel.   Notice of Restrictions, *In re Dorosh*, No. 02-PR-17-305 (Anoka Cnty. Dist. Ct. Aug. 25, 2022) (Index No. 422).

*The claims*.   Plaintiffs filed this lawsuit on April 21, 2023.   ECF No. 1.   Plaintiffs filed the operative Amended Complaint on April 24, 2023.   ECF No. 8.   Plaintiffs bring 32 counts—each claim brought on behalf of all three Plaintiffs against all 41 Defendants. Plaintiffs' claims are as follows: Count 1: Violation of Civil Rights (42 U.S.C. § 1983); Count 2: Negligence; Count 3: Violation of Due Process; Count 4: Declaratory Relief Under 28 U.S.C. §2201, *et. seq.*; Count 5: Violation of the First Amendment to the United

States Constitution (Freedom of Speech and Freedom to Express Religious Beliefs); Count 6: Violation of the Fourth Amendment (Unlawful and Unjust Civil Commitment); Count 7: Violation of the Minnesota 36-hour and 48-hour rules; Count 8: Violation of the Fourteenth Amendment (Due Process); Count 9: Violation of Due Process (Related to Service and Petition for Guardianship); Count 10: Violation of Due Process (via fraud upon the Court); Count 11: Conspiracy to Deprive Dorosh of Constitutional Rights (42 U.S.C. §§1985 and 1986); Count 12: Violation of the Fourth Amendment, Civil Rights, and Minn. Statute §144.651 ("Health Care Bill of Rights"); Count 13: Deprivation of Civil Rights Violation of Minnesota Statute, Section 144.651 Subd. 14. and Minn Stat. 626.5572 Subd. 15. ("Health Care Bill of Rights") Violation of 42 U.S.C. § 12132; Count 14: Violation of the Eighth Amendment and Fourteenth Amendment (Based upon *Jensen* Settlement Agreement); Count 15: Violation of Freedom from Abuse Neglect and Exploitation (42 U.S.C. §§483.12 12) and Minnesota Statutes, Chapter § 626.557 and subd. 411; Count 16: Violation of Social Security Act §§ 1915(c), 1915(i) and 1915(k) (Medicaid (HCBS) Programs); Count 17: Violation of the Fourth Amendment and Deprivation of Civil Rights Violation of 42 U.S. Code § 1396n; Count 18: Violation of the Fourth Amendment, Civil Rights, and 42 CFR, Part 441 (Minn. Statute §440.180, *et. seq.*); Count 19: Violation of the Minnesota Olmstead Plan (predicated on the Jensen Agreement) and Medicaid 42 CFR § 441.725; Count 20: Violation of 42 U.S.C. §12101, *et. seq.*; Count 21: Violation of 29 U.S.C. §790, *et. seq.*; Count 22: Violation of Minn. Statute §245D.04; Count 23: Violations of the Social Security Act (42 U.S.C. §§416.618, 416.620 and 416.621; Count 24: Violation of Minnesota Statute, Section 626.557, Subd. 6; Count 25: Violation

of Minnesota Statutes, Section 256.092, Subd. 5 and Subd. 7; Count 26: Violation of U.S.C. 42 CFR 431.301(c)(1)(vi)-1915(i), HCBS 42 CFR 441.730(b)-1915(k), Minnesota Statutes Section 256B.092 and Minnesota Rules 9525.0016, 9525.1860, and 9555.5050 to 9555.6265; Count 27: Violation of Minnesota Statutes, Chapter 86, S.F. 3357; Count 28: Violations of Minnesota's Civil Theft of Funds Statute (Minnesota Statute, Section 604.14) and Conversion; Count 29: Violations of Minnesota Adult Foster Care Statute Minnesota Statute Ch. 245A and Minnesota Rules 9555.5105 – 955.6265; Count 30: Violation of Section 701(a) of the Rehabilitation Act, 29 U.S.C. §796-1; Count 31: Violation of 42 U.S.C. §3601, *et. seq.*; and Count 32: Intentional Infliction of Emotional Distress.

B

*Defendant Blake Elliot owns Aldrich Boarding Care*.  "[Aldrich Boarding Care] is owned and operated by [Mr.] Elliot." Am. Compl. ¶ 42.  Aldrich Boarding Care is a "245D Home and Community Based Services Licensed Facility," *see id.*, where Daniel has been confined since March 2021, *id.* ¶¶ 50, 141.  Mr. Elliot "allowed staff to maltreat[] and exploit [Daniel], fully isolate and seclude [Daniel] with unlawful restrictions, and withhold [Daniel's] due process and constitutional rights." *Id.* ¶ 44.  Mr. Elliot further allowed staff to "falsify records . . . that his family had restraining and protective orders against them, and filed 'No Trespass' orders against his sisters." *Id.*  Mr. Elliot also failed to adequately respond to Daniel's family's phone calls, emails, and mail. *Id.*

*Aldrich Boarding Care isolates Daniel*.  At the direction of Presbyterian Family Foundation, Aldrich Boarding Care isolated Daniel by denying him visitors, telephone calls, personal mail, electronic communications, and from participating in social activities.

13

*Id.* ¶¶ 55, 61, 509.   This included Presbyterian Family Foundation directing Aldrich Boarding Care staff to keep Daniel from accessing a cell phone or facility phone to communicate with his family. *Id.* ¶ 60. "Defendants conspired with [Aldrich Boarding Care] Staff to always accompany [Daniel] to medical appointments, [and] never allow [Daniel] to speak in the medical appointments[.]" *Id.* ¶ 514. "[Aldrich Boarding Care] staff are always threatening [Daniel] that if he tells anybody what they do to him in [Aldrich Boarding Care] or wants to leave [Aldrich Boarding Care], that they will not give him dinner and keep food from him for punishment, among many other things. [Aldrich Boarding Care] has kept food from [Daniel] in the past[.]" *Id.* ¶ 609.

*Aldrich Boarding Care maltreats Daniel.* "Defendants unlawfully force anti-psychotics and other chemical restraints to completely subdue [Daniel] and confine him to bed sleeping all day to keep him in [Aldrich Boarding Care]." *Id.* ¶ 515. Aldrich Boarding Care "has been reported by a responsible [Aldrich Boarding Care] staff who saw first-hand unacceptable environments and activities of this Facility." *Id.* ¶ 301. Aldrich Boarding Care had its 245D license revoked by the Minnesota Department of Human Services on June 27, 2022. *Id.* ¶ 153. As a result of this maltreatment, "[Daniel's] health has seriously deteriorated in [Aldrich Boarding Care]." *Id.* ¶ 503.

## II

## A

The Aldrich Defendants seek to dismiss Plaintiffs' Amended Complaint under Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule

8(a)(2) is a procedural pleading requirement that "has the force of law." *Gurman v. Metro Hous. & Redevelopment Auth.*, 842 F. Supp. 2d 1151, 1152 (D. Minn. 2011). "A complaint which lumps all defendants together and does not sufficiently allege who did what to whom, fails to state a claim for relief because it does not provide fair notice of the grounds for the claims made against a particular defendant." *Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 831 (D. Minn. 2012). "Although pro se pleading are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law." *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984); *Sorenson v. Minn. Dep't of Corr.*, No. 12-cv-1336 (ADM/AJB), 2012 WL 3143927, at *2 (D. Minn. Aug. 2, 2012).

Plaintiffs' 32-count, 234-page Amended Complaint violates Rule 8(a)(2). By lumping all 41 Defendants together, Plaintiffs fail to put the Aldrich Defendants on notice as to which Plaintiffs are asserting which claims against them. The diverse legal bases for Plaintiffs' claims—federal statutes, federal regulations, state statutes, state rules, common law torts, the United States Constitution, and multiple class action lawsuits—compound the burden of responding to the Amended Complaint. Because Plaintiffs are pro se, a clear set of facts could be enough. But the facts about the Aldrich Defendants are sparse and sprinkled across 1,113 paragraphs. Plaintiffs' response brief could have been an opportunity to clarify what claims are brought against the Aldrich Defendants and the factual support for those claims. *See Grimmett v. Minn. Dep't of Corr.*, No. Civ 12-943 JNE/LIB, 2012 WL 6060974, at *2 n.1 (D. Minn. Nov. 8, 2012), *report and recommendation adopted*, 2012 WL 6057131 (D. Minn. Dec. 6, 2012). But no response

15

brief was filed.  Plaintiffs' Amended Complaint impermissibly shifts the pleading burden onto the Aldrich Defendants, leaving them to guess which claims are brought against them and which facts support those claims.  Even construing Plaintiffs' Amended Complaint liberally, this violates Rule 8(a)(2).

B

1

Even if Plaintiffs' Amended Complaint satisfied Rule 8, there are jurisdictional and merits-based defects.  Both the jurisdictional and merits aspects of the motion to dismiss are evaluated under the Rule 12(b)(6) standard.  Aldrich Boarding Care and Mr. Elliot rely only on the complaint and materials in the public record, making theirs a "facial" challenge to subject-matter jurisdiction.  *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914 (8th Cir. 2015).  In analyzing a facial challenge, a court "restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)."  *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (citations omitted).

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiffs' favor.  *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted).  Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  The complaint must "state a claim to relief that is plausible on its face."  *Id.* at 570.  "A claim has facial plausibility

16

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiffs' pro se pleadings are entitled to liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).   Pro se complaints, "however inartfully pleaded," are held "to less stringent standards than formal pleadings drafted by lawyers." *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson*, 551 U.S. at 94).  "[I]f the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone*, 364 F.3d at 914).  Still, even under this liberal standard, a pro se complaint must contain sufficient facts in support of the claims it advances. *Stone*, 364 F.3d at 914.

2

Start with jurisdiction.   Mr. Elliot and Aldrich Boarding Care argue Plaintiffs' claims should be dismissed for lack of subject-matter jurisdiction under the *Rooker-Feldman* doctrine.  "In the two decisions for which the doctrine is named, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), the Court established the narrow proposition that with the exception of habeas corpus proceedings, the inferior federal courts lack subject-matter jurisdiction over 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and

inviting review and rejection of those judgments.'"  *In re Athens/Alpha Gas Corp.*, 715

F.3d 230, 234 (8th Cir. 2013) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544

U.S. 280, 284 (2005)).  "This conclusion follows from 28 U.S.C. § 1257, which grants to

the Supreme Court exclusive jurisdiction over appeals from state-court judgments."  *Id.* at

234; *see also Exxon Mobil*, 544 U.S. at 283 ("Federal district courts . . . are empowered to

exercise original, not appellate, jurisdiction.").  In *Exxon Mobil*, the Supreme Court noted

that inferior federal courts had sometimes applied the *Rooker-Feldman* doctrine too

broadly, "overriding Congress' conferral of federal-court jurisdiction concurrent with

jurisdiction exercised by state courts, and superseding the ordinary application of

preclusion law pursuant to 28 U.S.C. § 1738," the Full Faith and Credit Act.  *Exxon Mobil*,

544 U.S. at 283.  To check the lower federal courts' enthusiasm for the *Rooker-Feldman*

doctrine, the Supreme Court made clear that the doctrine applies only to cases filed in

federal court by the losing party in state court "complaining of an injury caused by the

state-court judgment" that "call[] upon the District Court to overturn an injurious state-

court judgment."  *Id*. at 291–92.  Importantly, the Court also explained that § 1257 does

not "stop a district court from exercising subject-matter jurisdiction simply because a party

attempts to litigate in federal court a matter previously litigated in state court.  If a federal

plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that

a state court has reached in a case to which he was a party . . ., then there is jurisdiction and

state law determines whether the defendant prevails under principles of preclusion.'"  *Id.*

at 293 (quoting *GASH Assocs. v. Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)).

Some cases present straightforward *Rooker-Feldman* questions while others are more difficult. *See Athens/Alpha*, 715 F.3d at 234 (observing that "the scope of the *Rooker-Feldman* doctrine, even as narrowly described in *Exxon Mobil*, is sometimes fuzzy on the margins"); *Dodson v. Univ. of Ark. for Med. Scis.*, 601 F.3d 750, 756 (8th Cir. 2010) (Melloy, J. concurring) ("Indirect appeals from state-court judgments have been more controversial[.]"). Examples are instructive. Consider *Caldwell v. DeWoskin*, 831 F.3d 1005 (8th Cir. 2016). There, the plaintiff, Caldwell, sued his ex-wife (Lavender) and her attorney (DeWoskin) in a federal district court alleging they had violated the automatic stay by continuing to seek enforcement of a judgment of dissolution against Caldwell, including contempt sanctions, in Missouri state court after Caldwell had filed for bankruptcy. *Id.* at 1006–08. The Missouri state court "decided the automatic stay did not prevent it from holding Caldwell in contempt, and so held." *Id.* at 1007. The Missouri Court of Appeals later reversed the contempt judgment on grounds other than the automatic stay. *Id.* The federal district court entered summary judgment against Caldwell, determining that it lacked subject-matter jurisdiction under the *Rooker-Feldman* doctrine, *id.* at 1008, and the Eighth Circuit reversed, *id.* at 1008–09. The Eighth Circuit explained: "Whether the doctrine applies depends on whether a federal plaintiff seeks relief from a state court judgment based on an allegedly erroneous decision by a state court—in which case the doctrine would apply—or seeks relief from the allegedly illegal act or omission of an adverse party." *Id.* at 1008 (citing *Hageman v. Barton*, 817 F.3d 611, 615 (8th Cir. 2016)). Caldwell sought only "compensation for injuries he allege[d] were caused by the actions DeWoskin and Lavender took to enforce the state court's [judgment] after the

automatic stay was in place." *Id.* at 1009.  The Eighth Circuit concluded that "Caldwell's claims are not barred by *Rooker-Feldman* because they challenge the actions taken by DeWoskin and Lavender 'in seeking and executing the [state contempt orders],' rather than the state court orders themselves." *Id.* (quoting *Riehm v. Engelking*, 538 F.3d 952, 965 (8th Cir. 2008); *see also Hageman*, 817 F.3d at 614 (recognizing that the *Rooker-Feldman* doctrine "is limited in scope and does not bar jurisdiction over actions alleging independent claims arising from conduct in underlying state proceedings"); *Robins v. Ritchie*, 631 F.3d 919, 925 (8th Cir. 2011) (recognizing that *Rooker-Feldman* applies "if the federal claims can succeed only to the extent the state court wrongly decided the issues before it.").

Many of Plaintiffs' claims are barred by *Rooker-Feldman*.  The central thrust of the Amended Complaint is that Daniel's guardianship is unconstitutional.  *See, e.g.*, Am. Compl. ¶¶ 119–30.  In Count 4, for example, Plaintiffs request declaratory judgment that the underlying guardianship is unconstitutional.  *Id.* ¶ 807.  *Rooker-Feldman* squarely prohibits a lower federal court from declaring that a state court judgment is unconstitutional.  Many of Plaintiffs' other claims face a similar problem.  In Plaintiffs' Count 9 due process claim, for example, Plaintiffs allege "[Daniel] was never served the Petition for Guardianship for the August 15, 2017 [Petition.]"  Am. Compl. ¶ 857. Plaintiffs seem to be saying that the Anoka County District Court should have denied the petition because of procedural defects during the petition for guardianship. *Rooker-Feldman* prohibits a lower federal court from overturning an injurious state district court judgment on procedural or substantive grounds.  It is challenging to discern the premise behind each of Plaintiffs' 32 counts and therefore which of those "claims can

succeed only to the extent the state court wrongly decided the issues before it." *Robins*, 631 F.3d at 925. It suffices to conclude that jurisdiction is lacking for Plaintiffs' claims seeking to overturn the guardianship and turn to Plaintiffs' claims against the Aldrich Defendants that are not barred by *Rooker-Feldman*.

Plaintiffs bring a few discernable claims against the Aldrich Defendants that are not barred. First, the common law tort claims of negligence (Count 2) and intentional infliction of emotion distress (Count 32) are not barred. It can be inferred that Plaintiffs are seeking relief from Aldrich Boarding Care's allegedly tortious conduct, not seeking relief from an injurious state court judgment. Second, it can be inferred that Plaintiffs' statutory Minnesota-Health-Care-Bill-of-Rights claims (Counts 12 and 13) are based on alleged maltreatment by Aldrich Boarding Care. Finally, Plaintiffs' § 1983 civil rights claim (Count 1) appears to be based on Defendants' allegedly wrongful conduct during the guardianship proceedings in conjunction with Aldrich Boarding Care's alleged maltreatment and isolation of Daniel. *See* Am. Compl. ¶ 545 (Alleging "[s]ystemic fraud involving huge entities has occurred through fabricated evidence, false reports, illegal practices, withholding exculpatory evidence from court, abuse of process, bad faith, malfeasance, fraud upon the court, violations of due process, a conspiracy of collusion, and perpetrated physical, sexual, emotional and financial maltreatment"). As in *Caldwell*, *Rooker-Feldman* does not prevent jurisdiction over claims related to Defendants' allegedly wrongful conduct.

3

Plaintiffs' have waived their claims against the Aldrich Defendants by failing to file a response brief. A plaintiff waives its claims by failing to respond to a defendant's arguments on a motion to dismiss. *Doe v. Mayorkas*, No. 22-cv-00752 (ECT/DTS), 2022 WL 4450272, at *2 (D. Minn. Sept. 23, 2022) (citing *Espey v. Nationstar Mortg.*, LLC, No. 13-cv-2979 (ADM/JSM), 2014 WL 2818657, at *11 (D. Minn. June 19, 2014) (collecting cases)). As was discussed in the context of Rule 8, "pro se litigants are not excused from failing to comply with substantive and procedural law." *Burgs*, 745 F.2d at 528. Plaintiffs did not file a response brief opposing the Aldrich Defendants' motion to dismiss. *See generally*, Docket. This alone would be enough to grant the Aldrich Defendants' motion.

Plaintiffs' claims against the Aldrich Defendants fail on their merits regardless. To start, Plaintiffs fail to state a § 1983 claim against the Aldrich Defendants because Plaintiffs have failed to plausibly allege the Aldrich Defendants are state actors. "Only state actors can be held liable under Section 1983." *Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851, 855 (8th Cir. 2001). "Under [the Supreme] Court's cases, a private entity can qualify as a state actor in a few limited circumstances—including, for example, (i) when the private entity performs a traditional, exclusive public function; (ii) when the government compels the private entity to take a particular action; or (iii) when the government acts jointly with the private entity." *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. ---, 139 S. Ct. 1921, 1928 (2019) (citations omitted); *see Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980) ("Private persons, jointly engaged with state officials in the challenged action, are acting

[] 'under color' of [state] law for purposes of § 1983 actions.").  Aldrich Boarding Care is a private care facility licensed by the government, Am. Compl. ¶ 42, and there are no allegations suggesting Mr. Elliot works for the government.  At best, Plaintiffs allege that the Aldrich Defendants have followed the directions of Presbyterian Family Foundation, a state-appointed guardian.  *See, e.g.*, Am. Compl. ¶ 60 "[Presbyterian Family Foundation] directs [Aldrich Boarding Care] to keep [Daniel's] stolen cell phones, steal any new cell phones[.]").  But state-appointed guardians are not state actors under § 1983.  *Peterson v. Arnold*, No. 09-cv-0890 (PJS/RLE), 2009 WL 2972486, at *5 (D. Minn. Sept. 10, 2009); *Gebel v. Owsley*, No. 4:15 CV 38 RWS, 2015 WL 5853800, at *2 (E.D. Mo. Oct. 6, 2015).  Meanwhile, any allegations that the Aldrich Defendants are part of a civil rights conspiracy are conclusory.  *See, e.g.*, Am. Compl. ¶ 510 ("Defendants conspired to violate 245D mandates[.]").  Because the Aldrich Defendants are not state actors, Plaintiffs' § 1983 claims fail.

Plaintiff's claims under Minn. Stat. § 144.651 (Counts 12 & 13) fail because the statute does not provide a private cause of action.  The Minnesota commissioner of health has exclusive authority to enforce Minn. Stat. § 144.651.  Minn. Stat. § 144.653, subdiv. 1.  "By providing that the commissioner of health has exclusive authority to enforce the Minnesota Patients' Bill of Rights and that the issuance of such a correction order does not expand the patient's right to seek redress beyond the grievance procedures set forth in section 144.651, subdivision 20, the legislature demonstrated that it did not intend to create a private cause of action."  *Favors v. Kneisel*, 902 N.W.2d 92, 96 (Minn. Ct. App.

2017).  Regardless of whether the Aldrich Defendants violated Minn. Stat. § 144.651, Plaintiffs have no right to sue under the statute.

Turn next to Plaintiffs' state common-law negligence and intentional-infliction-of-emotional-distress claims against the Aldrich Defendants.  "Though pro se complaints are to be construed liberally, they still must allege sufficient facts to support the claims advanced."  *Stone*, 364 F.3d at 914.  To plead a negligence claim, a plaintiff must allege facts plausibly showing (1) the existence of a duty of care; (2) a breach of that duty; (3) an injury; and (4) the breach of the duty was the proximate cause of the injury.  *Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn. 1995).  Plaintiffs' allegations against the Aldrich Defendants are too vague and conclusory to state a claim for negligence.  Examining a few example allegations is instructive.  Plaintiffs allege that "Defendants unlawfully force anti-psychotics and other chemical restraints to completely subdue [Daniel]."  Am. Compl. ¶ 515.  To start, this allegation fails to distinguish between the 41 Defendants in this case.  And "unlawfully force" is a legal conclusion, not a factual allegation.  More importantly, Plaintiffs do not allege who is administering the drugs, what drugs are being administered, and why administering those drugs breaches Aldrich Boarding Care's standard of care.  Elsewhere in the Amended Complaint, Plaintiffs allege Aldrich Boarding Care "has been reported by a responsible [Aldrich Boarding Care] staff who saw first-hand unacceptable environments and activities of this Facility."  Am. Compl. ¶ 301.  "[U]nacceptable environments and activities" is too vague and conclusory to plausibly sustain a negligence

24

claim against the Aldrich Defendants.[9]  Plaintiffs fail to plausibly state a negligence claim against the Aldrich Defendants under Rule 12(b)(6).

Plaintiffs' intentional-infliction-of-emotional-distress claim fares no better.  To plead a claim for intentional infliction of emotional distress under Minnesota law, Plaintiffs must allege facts plausibly showing "(1) the conduct was extreme and outrageous; (2) the conduct was intentional or reckless; (3) [the conduct] caused emotional distress; and (4) the distress was severe."  *K.A.C. v. Benson*, 527 N.W.2d 553, 560 (Minn. 1995) (citation omitted).  To be "extreme and outrageous," conduct must be "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community."  *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 439 (Minn. 1983).  Plaintiffs' intentional-infliction-of-emotional-distress claim rests on the same facts as Plaintiffs' negligence claim.  The allegations remain conclusory.  *See, e.g.*, Am. Compl. ¶ 44 (Mr. Elliot "allowed staff to maltreat, and exploit [Daniel], fully isolate and seclude [Daniel] with unlawful restrictions, and withhold [Daniel's] due process and constitutional rights.").  The sparse relevant factual allegations are that Aldrich Boarding Care prevented Daniel from accessing a cell phone, *see id.* ¶ 60, prevented him from leaving the facility, *see id.* ¶ 515, and "[Aldrich Boarding Care] staff are always threatening [Daniel] that if he tells anybody what they do to him in [Aldrich Boarding Care] . . . that they will not give him

---

[9]    Another reason to dismiss the negligence claim is that Plaintiffs only allege the Aldrich Defendants have intentionally harmed Daniel, they do not allege negligent conduct.  "The very fact that an act is characterized as negligent indicates that harm to another as the result of it was neither foreseen nor *intended*[.]"  *Noske v. Friedberg*, 713 N.W.2d 866, 876 (Minn. Ct. App. 2006) (quoting *Hanson v. Hall*, 279 N.W. 227, 229 (Minn.1938)).

dinner," *see id.* ¶ 609.  These allegations are not enough.  Plaintiffs fail to plausibly allege that the Aldrich Defendants' conduct was "utterly intolerable to the civilized community." *Hubbard*, 330 N.W.2d at 439.[10]


## ORDER

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT:**

1.  Defendants Aldrich Boarding Care Home, LLC, and Blake Elliot's Motion to Dismiss [ECF No. 146] is **GRANTED**; and

2.  Plaintiffs' claims against Defendants Aldrich Boarding Care Home, LLC, and Blake Elliot are **DISMISSED WITHOUT PREJUDICE**.


Date:  September 26, 2023          s/ Eric C. Tostrud                        
                                   Eric C. Tostrud
                                   United States District Court

---

[10]     The Court does not reach the Aldrich Defendants' capacity argument because the Amended Complaint is dismissed on other grounds.